(Superior Court of Cincinnati)
General Term, 1897.

THE P. C. C. & ST. L. RY. COMPANY
v. FRANCES BURROUGHS,
ADMINISTRATRIX.

---

I. Remarks by the trial judge in the presence and hearing of the jury as to the inaccuracy of reports of testimony before the coroner, when such report is about to be offered in evidence for the purpose of impeaching a witness upon an important issue in the case, constitute reversible error, when such remarks have been duly excepted to at the time.

II. Where in an action for "wrongful death" it is claimed among other things that the defendant was guilty of negligence in making a "running switch" of certain of its cars, the defendant should be permitted to show that it had with the knowledge and acquiescence of the deceased been in the habit of making "running switches" of cars in its yards in Cincinnati.

By reason of such acquiescence the employe thereby waived his right against the company for any negligence that may have been involved in making "running switches", and took the risk upon himself.

In such case it was error to limit the defendant to proof of habitually making "running switches" to the particular track upon which the deceased was killed.

III. Whether an employe is guilty of negligence in attempting to cross a track at night, after an engine which has made a "running switch" has passed, and in failing to observe the approach of the cars which closely follows the engine after being so switched: Held to be a question of fact for the jury under all the circumstances of the case.

---

JACKSON, J.; SMITH and HUNT, JJ., concurring.

This is an action brought by Frances Burroughs as administratrix of Oscar M. Burroughs, deceased, against the P., C., C. & St. L. Ry. Company, in which plaintiff seeks to recover damages from the defendant on account of the death of said Oscar M. Burroughs, which it is alleged was caused by the negligence of the defendant railway company.

The acts of negligence complained of are that defendant made a "running switch" of certain cars in its yard in Cincinnati on the night of December 20, 1893; also that in making such "running switch", the car which was cut off from the engine and allowed to run of its own motion did not have any light upon the end so that its approach could be observed; and also, that defendant wrongfully permitted a frog to remain unblocked. It is claimed that the deceased, who was a switchman in the employ of defendant in its yards in Cincinnati, attempting to cross the track after seeing the engine pass, and that he was struck by the approaching caboose, which could not be seen owing to the absence of any light upon the same; that he endeavored to protect himself by holding on to the hand hold of the car, and that he was dragged along until his foot was caught in the open frog, which caused him to be run over and killed. The trial resulted in a verdict of $2,500 in favor of plaintiff.

The company denied that the frog was left unblocked, and this question was, we think, of the greatest importance in determining its liability. Upon this question plaintiff called as a witness one Albert Hosmer, who testified that he extracted the deceased's foot from the frog immediately after the accident. The witness was then asked by the defendant if he had not testified before the coroner, that he, "did not know if the frog was blocked," and hav-

ing denied that he so testified before the coroner, defendant's counsel asked leave to send for the report of the coroner's inquest for the purpose of contradicting the witness. The court granted this application, but in doing so remarked: "The clerk down there writes things from a memorandum sometimes and gets parties to sign it without its being read. I know of an instance a short time ago where they signed testimony in the coroner's office and brought it up here, and it was written out by some clerk after the examination was over, and it was signed by the parties without it being read to them." This statement was made in the presence of the jury and was excepted to by counsel, and it does not appear that at any time was it withdrawn or explained away by the court. We think this was error prejudicial to the defendant, for the reason that it was well calculated to impeach in the eyes of the jury the correctness of the record in the coroner's office, upon which defendant relied to contradict the witness upon the most vital point in the case. It seems especially prejudicial from the fact that the witness thereafter stated that his testimony as given before the coroner had not been read over to him, and that it had not been correctly reported.

We think the court also erred in refusing to admit testimony to show that it had been the custom of the defendant durng the period of employment of the deceased to make "running switches," and switches of the character of the one upon which deceased was killed.

The plaintiff claimed that defendant was negligent in the manner of operating its cars, in making a "running switch," claiming that such a method of switching cars was unsafe to employes in the yard. On pages 103, 124 and 125 of the bill of exceptions it appears that defendant offered to prove that it had, with the knowledge of the deceased, been in the habit of making running switches upon tracks similar to the track upon which the deceased was killed. But such evidence was rejected, the court containing proof of such custom to the particular track upon which the injury was received.

In Railway Company v. Knittal, 33 Ohio St., 468, the question seems to have been decided as follows:

"If, however, such employe, with full knowledge of an habitual and continued negligence of the company or his superior fellow-employes in some particular matter, acquiesces therein and continues in the service of the company, without any objection or effort toward a correction of the neglect, he thereby waives his right against the copmany and takes the risk upon himself."

We think, therefore, the failure of the court to admit this evidence was error.

There are other assignments of error by defendant, but the two heretofore considered are the only ones we consider as being well taken.

It is urged that the court erred in refusing to charge the jury that the question as to the frog being blocked was an immaterial point in the case. This is based upon defendant's assumption that deceased was guilty of contributory negligence in stopping on the track in front of the caboose which had been cut loose from the engine, and that defendant's negligence in leaving the frog unblocked was not therefore the proximate cause of the injury.

But we are unwilling to hold as a matter of law that the deceased was guilty of contributory negligence in endeavoring to cross the track at the time of the injury. We think under the circumstances of this particular case the question of decedent's negligence in this particular should have been left to the jury. It was a question of fact for the jury under proper instructions of the court. As the question of the deceased's contributory negligence in this particular enters largely into the case, we have deemed it proper to give our reasons for holding that all assignments of error based upon the assumption that deceased was as a matter of law guilty of contributory negligence are not well taken.

We will not consider any other assignments further than to say that there are no errors in the record prejudicial to defendant company except the two herein first considered. For such prejudicial errors the judgment of the court below is reversed and the cause remanded for a new trial.

Ramsey, Maxwell & Ramsey, for Plaintiff in Error.

Jones & James, for Defendant in Error.